<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KAREN K. MOORE, : | |
| : | |
| Plaintiff, : | Civil Action No. 05-773(FLW) |
| : | |
| v. : | |
| : | |
| JO ANNE B. BARNHART, : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

APPEARANCES:

For Plaintiff:
ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 WHITE HORSE PIKE
AUDUBON, NJ 08106

For Defendant:
GINA N. SHIN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278-0004

**<u>WOLFSON, United States District Judge</u>**

Plaintiff Karen Moore ("Plaintiff" or "Moore") appeals from the final decision of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner"), denying Plaintiff disability benefits under the Social Security Act (the "Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she was disabled. She

specifically argues that the Administrative Law Judge failed to evaluate her alcoholism or effects thereof as required by Social Security Standards and failed to articulate a sufficient rationale for discrediting her credibility.  For the reasons stated below, the Court finds that the decision of the Commissioner is supported by substantial evidence in the Record and is therefore affirmed.

**I.     BACKGROUND**

Plaintiff was born on December 17, 1955, and has a high school education.  Over the past fifteen years, she has worked primarily as a cashier, a caregiver in a retirement home, and in a medical billing office. Admin. R. ("AR") at 66-67.  She alleges that as a result of her manic depression, suicidal tendencies, hypertension, accelerated functional rhythm, panic attacks, rheumatoid arthritis, and pain in her left wrist, right wrist, back, legs, and elbows she has been unable to work since 1998.  Id. at 20.

**A.     Procedural History**

On August 8, 2001, Plaintiff filed her application for Supplemental Security Income. Her application was denied initially and again upon reconsideration.  Following the denial of her application, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").  At the hearing, which took place on February 17, 2004 before ALJ Joel Martinez, Plaintiff was represented by Hector Yepez, Esq.  On April 24, 2004, the ALJ issued his decision that Plaintiff was not disabled under the Act.  He found that Plaintiff had medically determinable impairments that in combination were severe but did not constitute any listed impairments.  He also questioned Plaintiff's credibility.  Plaintiff petitioned the Appeals Council for review of the ALJ's decision; however, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

B.     Medical Evidence

Plaintiff alleged to the ALJ that she suffered from migraine headaches. Indeed, the medical evidence establishes that Plaintiff complained to doctors on January 3, 2002, id. at 184, June 25, 2002, id. at 336, and August 20, 2003, id. at 375, that she was suffering from migraine headaches. However, on August 20, 2003, her treating physician diagnosed her as having chronic headaches but not migraines. Id. at 375. She has also complained of nasal congestion and was diagnosed with sinusitis on November 18, 2003. Id. at 374, 396.

Plaintiff has also alleged wrist pain. On April 3, 2001, Dr. James Choi reported that Moore had a fracture in her left wrist that was healing. Id. at 39. On March 20, 2000, Plaintiff had carpel tunnel release in her right wrist. Id. at 62. Plaintiff also fractured her left wrist while rock climbing on August 8, 2000. Id. at 265, 369. On November 29, 2001, Plaintiff was diagnosed as having a volar ganglion cyst on her right wrist. Id. at 256. On January 3, 2002, complained of pain in her right wrist from the cyst and weakness in both wrists "to the point of dropping items." Id. at 184. However, Dr. Sahniah Siciarz-Lambert, a consultative internist, reported that "the degree of subjective complaints is inconsistent with the objective findings at this point." Id. at 187. On December 5, 2003, Dr. Siciarz-Lambert reported that Plaintiff moved her right wrist "without restriction." Id. at 354.

Plaintiff has alleged that she had accelerated functional rhythm. Electrodiagrams ("EKG") conducted in January 2002 and August 2002 revealed that Plaintiff had an accelerated functional rhythm and sinus tachycardia. Id. at 187, 238. Dr. Siciarz-Lambert thought that Plaintiff's complaints of chest pain were consistent with angina, id. at 187; however, in December 2003, she believed that Plaintiff's complaints were atypical of angina, id. at 354.

Moreover, examinations in January 2002 and December 2003 revealed a regular rate and rhythm. Id. at 185, 352. While X-rays taken in December 2003 showed mild cardiomegaly, there is no accompanying diagnosis. Id. at 460.[1] Additionally, she has been diagnosed as having hypertension, or high blood pressure. Id. at 187, 215. However, Dr. Siciarz-Lambert reported on December 5, 2003 that her hypertension was "well controlled." Id. at 352, 254.

Plaintiff also gives a history of chronic obstructive pulmonary disease, and some doctors have included it as a diagnosis. Id. at 219, 232, 249. However, Dr. Siciarz-Lambert noted on December 5, 2003 that while Plaintiff gave "a history of COPD, ... her pulmonary function test does not reveal any significant pulmonary obstructive component at this time." Id. at 354-55. On December 5, 2003, Dr. Siciarz-Lambert also reported that Plaintiff was at that time smoking one pack of cigarettes per day and had smoked for thirty years, id. at 350, even though doctors had advised her to quit smoking, id. at 257, 374. On April 7, 2003, Plaintiff went to the emergency room as a result of right lower quadrant pain. Id. at 349. An examination of Plaintiff conducted on June 16, 2003, revealed that she had uterine leiomyomas. Id. at 444.

Plaintiff also has a history of rheumatoid arthritis, as diagnosed on March 27, 2000, id. at 421, and August 2, 2000, id. at 472. However, on January 31, 2002, Plaintiff was diagnosed with lumbago with lower left extremity sciatica, and not rheumatoid arthritis. Id. at 369. On December 5, 2003, Dr. Siciarz-Lambert noted that although Plaintiff reported that she had rheumatoid arthritis, such a diagnosis "is not substantiated by the medical records. She actually moves about fairly well." Id. at 354.

---

[1] When reporting her medical history in November 2003, Plaintiff maintained that she had no known heart disease. AR at 396.

Plaintiff has also alleged back pain. Dr. Siciarz-Lambert noted on January 3, 2002 and on December 5, 2003, that an "inspection of Plaintiff's back does not reveal any evidence of significant kyphosis, lordosis, or noticable scoloiosis" and that "palpation along the paravertebral area does not elicit complaints of pain." Id. at 186, 353.  However, on January 3, 2002, regarding Plaintiff's back's range of motion, Dr. Siciarz-Lambert noted that "forward flexion is limited." Id.  At both examinations with Dr. Siciarz-Lambert, the consultative internist commented that Plaintiff did not fully cooperate with range of motion tests. Id. at 186, 353. Although X-rays taken in January 2002 revealed "some loss of the normal lordotic curvature," the radiologist noted that this could be a result of positioning. Id. at 189.  Moreover, X-rays taken on April 3, 2001 and April 25, 2002 show a normal lumbrosacral spine. Id. at 277 , 540.

At the February 17, 2004 hearing, Plaintiff testified that she was the victim of an assault "about a year" earlier, which caused injuries to her nose, shoulder, neck and cheek. Id. at 61-62. Yet two years earlier, on February 5, 2002, Plaintiff was diagnosed with a fracture of her right proximal humerus and was directed to wear a shoulder immobilizer, and later, a sling. Id. at 245, 246, 250.  While an X-ray also reveals that Plaintiff had a nasal bone fracture, that X-ray took place on January 25, 2001, which is two years before the alleged assault occurred. Id. at 291.

Regarding Plaintiff's Residual Functional Capacity ("RFC"), in January 2002, Dr. Siciarz-Lambert opined that Plaintiff can lift and carry fifty pounds occasionally and twenty-five pounds frequently.  She also opined that Plaintiff had no limitations with bending, sitting, standing, walking or fingering but that she has limitations with repetitive flexion and extension of her wrists. Id. at 188.  In December 2003, Dr. Siciarz-Lambert noted that her impression of Plaintiff had not changed from the January 2002 evaluation. Id. at 354.  On February 14, 2002,

5

the State Agency agreed with Dr. Siciarz-Lambert's assessment of Plaintiff, and added that Plaintiff was limited in her ability to stand/walk for six out of eight hours and sit for six out of eight hours.  Id. at 195.

      **C.**      **Mental Impairments**

Plaintiff has reported that since she was a teenager, she has had problems with alcohol. Id. at 309.  She has been to rehabilitation programs, including one at Charter Oaks Hospital, and has been in and out of Alcoholics Anonymous.  Id.  On March 15, 2001, she admitted to drinking three cans of beer per day and was diagnosed with alcohol dependency. Id. at 172-73.  At a December 11, 2001 doctor's appointment, Plaintiff smelled of alcohol.  Id. at 337.  On January 3, 2002, however, Plaintff denied using alcohol.  Id. at 184.  Approximately one year later, on January 5, 2003, Plaintiff claimed to have been sober for only six months, id. at 309, and was once again diagnosed with alcohol dependency, id. at 311.   At the February 17, 2004 hearing, Plaintiff testified that she had been sober since 2002.  Id. at 58.

Plaintiff also twice attempted suicide.  In March 2001, Plaintiff took an overdose of blood pressure medication with alcohol, id. at 172, and on March 15, 2001 was diagnosed with "major repressive diorder, recurrent, moderate" and with alcohol dependency, as stated above, id. at 173.  In August 2002, Plaintiff cut her neck, wrist and elbow with a razor and was resultingly hospitalized at the at Charter Oaks Hospital from August 6, 2002 through August 13, 2002.  Id. at 214.  When admitted at Charter Oaks, Plaintiff's Global Assessment of Functioning ("GAF") was estimated at twenty five (25).  Id. at 217.  The psychiatrist at Charter Oaks who performed mental status testing of Plaintiff diagnosed her with major depression.  Id.  Upon her discharge from Charter Oaks, her GAF was estimated at forty (40).  Id. at 214.  It was also estimated that

6

within the past twelve months, Plaintiff's highest GAF score was eighty five (85).  Id.  Moreover, upon her discharge, she was diagnosed with "bipolar disorder, depressed phase" and severe psychosocial and environmental problems.  Id.

Later, on January 3, 2003, Plaintiff characterized her time at Charter Oaks as alcohol-related.  Id. at  310.  She also indicated that she suffered from anxiety, but that the anxiety was relieved by taking Elavil, which had been prescribed by her primary care doctor.  Id. at 311.  Her GAF was estimated at sixty one (61).  Id.  In August 2003, Plaintiff yelled and swore at her primary care physician, who observed that Plaintiff "seem[ed] tp be suffering from bipolar disorder."  Id. at  375.  On January 5, 2003, the consultative psychiatrist opined that Plaintiff could perform simple work and no other mental limitations.  Id. at  312.  The State Agency agreed with this assessment.  Id. at  318

## II.   DISCUSSION

### A.   Standard of Review

The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence has been defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The substantial evidence standard is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 191 F.3d 429, 431 (3d Cir. 1999)).  The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler,

743 F.2d 1002, 1007 (3d Cir. 1984)).

      B.      **Standard for Entitlement of Benefits**

In order to establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Plummer, 186 F.3d at 427. An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated regulations setting forth a five-step evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Plummer, 186 F.3d at 428. In step one, the Commissioner must first determine whether the claimant has shown he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial gainful activity, the claim will be denied. Bowen, 482 U.S. at 140.

Where the claimant is not performing substantial gainful work, the Commissioner proceeds to step two to determine whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see also Bowen, 482 U.S. at 140-41. If a claimant fails to show that the impairments are severe, he or she is ineligible for disability

benefits.  Bowen, 482 U.S. at 141; Plummer, 186 F.3d at 428.

In step three, if the claimant is not performing substantial gainful work and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or medically equals a listed impairment contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings of Impairments"), the claimant has satisfied his burden of proof, is presumed disabled, and is entitled to benefits. See 20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141.

If the Commissioner determines that the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the ALJ must consider at step four whether the claimant retains the residual functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141; Plummer, 186 F.3d at 428.  If the claimant is able to perform his or her previous work, the claimant is determined not to be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.

Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); Plummer, 186 F.3d at 428.  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with the claimant's medical impairments, age, education, past work experience, and residual functional capacity.  Id.  The ALJ must analyze the cumulative effect of all the

claimant's impairments in determining whether the claimant is capable of performing work and is not disabled. Id.

### C.     Hearing, Decision and Findings of the ALJ

A hearing before ALJ Martinez regarding Plaintiff's application for SSI benefits took place on February 17, 2004, at which Plaintiff and a Vocational Expert, Howard Goldfarb (the "VE"), testified. The ALJ asked the VE if he could identify jobs that could be performed by an individual with Plaintiff's vocational profile and RFC. AR at 67.  The VE identified the light unskilled positions of battery inspector, closed circuit television or surveillance monitor and information clerk. Id. at 68.  In the local area, the VE estimated that there were 4,500 to 5,000 battery inspector positions, 1500-2000 monitor positions, and 2,000 information clerk positions. Id.

While disregarding the monitor position, which was classified in the Dictionary of Occupational Titles as being performed at a sedentary exertional level, the ALJ determined that jobs existed in significant numbers that Plaintiff could perform and that Plaintiff was not disabled at any time from August 8, 2001, the date of Plaintiff's application, through April 14, 2004, the date of the ALJ's decision. Id. at 31.

After considering the entire record, the ALJ made the following findings:

1. There is no evidence that the claimant has engaged in substantial gainful activity since August 8, 2001, the date she filed her application for SSI.
2. The claimant has medically determinable impairments consisting of alcohol dependency, a bipolar disorder, chronic headaches, chronic sinusitis, a right volar ganglion cyst, a history of rheumatoid arthritis, chronic pulmonary disease, hypertension, and uterine leiomyomas.

10

|     | The claimant's medically determinable impairments in combination are severe, but they do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. |
| --- | --- |
| 3.  | The claimants statements regarding her impairments and their impact on her ability to work are not entirely credible for reasons explained in the body of this decision. |
| 4.  | The claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six out of eight hours, and sit for about six hours in an eight hour workday. She cannot repetitively flex or extend her wrist, and she must avoid concentrated exposure to fumes, odors, and chemicals. She can perform simple work. |
| 5.  | The claimant has [sic] cannot perform her past relevant work as a manager of billing office, a cashier/stocker, a bill collector, or a nurses [sic] aid. |
| 6.  | Throughout the period under consideration, the claimant is a "younger individual." |
| 7.  | The claimant has a high school education. |
| 8.  | Based on only exertational limitations, the claimant's age, educational background, and work experience, Section 416.969, and Rules 203.29 and 203.30, Table 3, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled." Rules 202.21 and 202.22 would similarly direct a finding of "not disabled." |
| 9.  | The claimant is unable to perform the full range of medium work. She is nevertheless capable of performing work that exists in significant numbers in the local economy. Such work includes employment as a Battery Inspector and an Information Clerk. Within the framework of the above-cited rule, the claimant is "not disabled." |
| 10. | The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the decision. |

Id. at 31-32.

The ALJ's decision became the final decision of the Commissioner when Plaintiff's petition for review to the Appeals Council was denied. Id. at 4-6.

### D. Plaintiff's Claims on Appeal

**1) Plaintiff's Alcoholism**

Plaintiff contends that the ALJ "failed to evaluate [Plaintiff's] alcoholism or effects of

alcoholism as required by Social Security Standards." Pl.'s Br. at 12. Specifically, Plaintiff contends that while the ALJ mentioned Plaintiff's problems with alcohol, "he failed to address the impact of [her alcoholism] on her disability status" and did not state whether Plaintiff "was found not to be disabled considering the alcohol use." Id. Indeed, the Social Security Administration's regulations of the Act require that only after the ALJ has made an initial determination 1) that plaintiff is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he or she then reach a conclusion on whether plaintiff's substance use disorders are a contributing factor material to the determination of disability, so as to preclude benefits. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535; see Frank S. Bloch, Bloch on Social Security § 3.39 (2003) ("A finding of disability is, in effect, a 'condition precedent' to applying the special rule on alcoholism and drug addiction").

     Moreover, in determining that a disability claimant's alcoholism or drug addiction was a contributing factor material to the determination of disability, as would preclude an award of benefits, an ALJ must identify at least some medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking drugs. 42 U.S.C.A. § 423(d)(2)(C); see Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) (remanding with directions where ALJ substituted his own opinion for that of a treating physician); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence.") (quoting Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

     The instant case is not one in which the ALJ determined that if Plaintiff stopped using

alcohol or drugs, she would not be disabled.  Had the ALJ made such a determination but failed to determine whether plaintiff's substance use disorders are a contributing factor material to the determination of disability in the manner delineated by 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R § 404.1535 and failed to identify the specific medical evidence that supports his conclusion, those failures could constitute error.  Here, though, the ALJ found that despite the medically determinable impairment of alcohol dependency, Plaintiff was not disabled.  AR at 26, 31-32.  As a result, the doctrine of law to which Plaintiff cites is inapplicable here and the ALJ was not in error.

### 2) Plaintiff's Credibility

Plaintiff also argues that the ALJ failed to articulate a sufficient rationale for discrediting her credibility.  Pl.'s Br. at 12.  Specifically, she contends that the ALJ did not provide adequate reasons for discounting her credibility and her allegations that she suffered from migraine headaches, a heart condition, weakness in hands and propensity to drop objects.  Id. at 14-16.  Morever, Plaintiff also contends that the ALJ relied too heavily on the fact that Plaintiff went rock climbing in August 2000, and did not take her allegations of pain "seriously" enough as a result.  Id. at 15.

Under the applicable Social Security regulations, allegations of pain and other subjective symptoms advanced by a claimant must be supported by objective medical evidence. 20 C.F.R. § 404.1529.  If an ALJ concludes that the available medical findings and evidence could reasonably cause a claimant's alleged subjective symptoms, the ALJ must attempt to ascertain and evaluate the severity of the claimant's pain as well as the degree to which it may limit the claimant's ability to perform various types of work. "This obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999). When an ALJ undertakes this required credibility determination, 20 C.F.R. § 404.1529(c) and Social Security Ruling ("SSR") 96-7p provide necessary guidance. SSR 96-7p provides:

> 1.  No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.
>
> 2.  When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
>
> 3.  Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
>
> 4.  In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently

> specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ found that Plaintiff retained the RFC to "lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six out of eight hours, and sit for about six hours in an eight hour workday." AR at 31. He also found that "[s]he can perform simple work," but "[s]he cannot repetitively flex or extend her wrist, and she must avoid concentrated exposure to fumes, odors, and chemicals." Id. However, the ALJ found a number of inconsistencies between the conditions Plaintiff alleged to have had and the medical evidence. Specifically, he found that chronic obstructive pulmonary disease, migraine headaches, and a heart condition were not established as medically determinable impairments and that there was no medical evidence to support that she had a condition that would cause to have hands so weak that she dropped items. Id. at 27-28. He also found that Plaintiff's "allegation that chronic obstructive pulmonary disease contributes to an inability to work [was] inconsistent with her failure to stop smoking" as recommended by her doctors. Id. at 28. The ALJ also explained that the fact that Plaintiff attempted rock climbing in August 2000 even though she alleged that she has been disabled since 1998 due to, among other things, extreme physical pain, caused him "to find that her allegations of disabling pain ... [were] less than credible. Id. He also found that Plaintiff was minimally cooperative with Dr. Siciarz-Lambert, the consultative internist, and that the doctor noted that Plaintiff's abilities seemingly increased when she was aware that she was not being observed. Id. Additionally, he pointed out that while Plaintiff had said previously that she stopped working "due, in part, to poor concentration and inability to focus," id.; on January 5, 2003, after she had stopped drinking, Plaintiff "admitted

15

that she stopped working due to problems with alcohol," id. Regarding Plaintiff's alleged mental impairments, the ALJ noted that, despite her suicide attempts, Plaintiff never sought mental health treatment after she was discharged from the two hospitals, and that Plaintiff herself admitted that her mental limitations were alcohol-related. Id. Moreover, the ALJ noted that the Los Angeles County rheumatology doctor suggested in his notes that Plaintiff's behavior and complaints might be merely "prescription seeking." Id. Another one of Plaintiff's treating doctors reported that Plaintiff had stated that she "wanted permanent Social Security Disability" and was not interested in vocational rehabilitation services. Id. The ALJ also considered the statements of Cheryl Lloyd,[2] Plaintiff's friend, but found that they did not convince him that Plaintiff had "any limitations in excess of those described by the medical evidence." Id. at 28-29. Furthermore, he found that the "mental condition that Ms. Lloyd describe[d] is inconsistent with [Plaintiff's] failure to seek mental health treatment." Id. at 29. Finally, the ALJ found that Plaintiff's ability to take public transportation and that she was looking for a job in January 2003 were indicative of her belief that she could work. Id. For the reasons set forth by the ALJ, this Court finds that substantial evidence exists in the record to support his credibility determinations. It was therefore proper for the ALJ to accord only limited weight to Moore's allegations as to her condition.

Moreover, the reviewing court usually defers to the ALJ's determination of credibility because the ALJ had the opportunity during a hearing to assess the Plaintiff's demeanor. See,

---

[2]Lloyd completed a form for Plaintiff, in which Lloyd stated that Plaintiff was "homeless" and "extremely depressed," and suffered from back and wrist pain, "bipolar episodes," migraines and insomnia. AR at 122-27.

e.g. Atl. Limousine, Inc. v. NLRB, 243 F.3d 711, 718 (3d Cir. 2001). However, as stated above, SSR 96-7p provides that the ALJ may not base a decision regarding credibility on "an intangible or intuitive notion about an individual's credibility." SSR 96-7p. Additionally, such deference does not extend to decisions without sufficient evidentiary support. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (stating that ALJ failed to explain discrediting certain evidence and not others). This Court is loath to overturn the credibility determinations of an ALJ who heard live testimony and provided specific reasons for questioning Plaintiff's credibility. See Irelan v. Barnhart, 243 F. Supp.2d 268, 284 (E.D. Pa.2003) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) ("[The] ALJ is empowered to evaluate the credibility of witnesses, and his findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.")). Therefore, and as discussed above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence in the Record and is therefore affirmed. An appropriate order shall follow.

                                                        S/ Freda L. Wolfson
                                                        Honorable Freda L. Wolfson
                                                        United States District Judge

Dated: February  14 , 2006